**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

KENNETH BUETTNER,

  Plaintiff-Appellant,

v.

NORTH OKLAHOMA COUNTY
MENTAL HEALTH CENTER, doing
business as North Care Mental Health
Center,

  Defendant-Appellee.

No. 04-6389
(D.C. No. CV-03-848-T)
(W.D. Okla.)

**ORDER AND JUDGMENT** *

Before **KELLY, McKAY** , and **McCONNELL** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore

ordered submitted without oral argument.

---

\* This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiff-Appellant Kenneth Buettner filed suit against his former employer, North Oklahoma County Mental Health Center, doing business as North Care Mental Heath Center (North Care). Plaintiff claimed that North Care constructively discharged him in violation of the Americans with Disabilities Act (ADA) and Oklahoma's statutory prohibitions against disability discrimination, the Family and Medical Leave Act (FMLA), the Age Discrimination in Employment Act (ADEA), and Oklahoma's statutory prohibition against retaliation for exercise of workers' compensation rights. North Care moved for summary judgment. After a thorough analysis, the district court granted North Care's motion for summary judgment and dismissed plaintiff's claims. Plaintiff appeals, and we affirm.

BACKGROUND

The district court's order contains a thorough and detailed recitation of the record evidence and factual background, which we need not repeat. The district court dismissed plaintiff's workers' compensation retaliation claim because plaintiff never told North Care he suffered a work-related injury or that he intended to file a workers' compensation claim, and he did not file his claim until after he resigned. It also dismissed plaintiff's ADEA claim because plaintiff failed to present evidence that he was replaced by a younger worker, treated differently than any other employees because of his age, or constructively

discharged because of his age. As to plaintiff's FMLA claim, the district court ruled that plaintiff presented no evidence from which a reasonable juror could conclude that plaintiff's separation from employment was causally connected to the fact that North Care provided him with FMLA rights. Finally, the district court ruled that plaintiff did not demonstrate that he suffers from a qualifying disability under the ADA, that is, a physical or mental impairment which substantially limits one or more major life activities, and thus, ruled that plaintiff failed to establish a prima facie case of ADA discrimination.

## ANALYSIS

We review the grant of summary judgment de novo, applying the same standard as did the district court. *MacKenzie v. City & County of Denver*, 414 F.3d 1266, 1273 (10th Cir. 2005). Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). We review the record and any reasonable inferences therefrom in the light most favorable to the nonmoving party. *MacKenzie*, 414 F.3d at 1273.

*Age Discrimination Claim*.

Plaintiff contends the district court erred in dismissing his age discrimination claim, arguing it improperly resolved disputed issues of fact. Plaintiff alleged he was replaced by a younger worker, Terry Hamm. *See Miller v. Eby Realty Group* LLC, 396 F.3d 1105, 1111 (10th Cir. 2005) (noting that one required element of prima facie ADEA discrimination claim is replacement by a younger worker). North Care responded that it did not replace plaintiff with Hamm, but that Hamm was simply hired as an additional maintenance worker and months later plaintiff resigned. It presented evidence that it decided after the merger it needed an additional maintenance worker; that it advertised for this position in August 2002, before plaintiff failed to finish his repair tasks or was hospitalized; and that it hired Hamm for this job in September 2002, while plaintiff was on leave but before it had any indication he would not return to work. North Care's evidence consisted of an affidavit from its human resource director, Ms. Brandenberger, as well as its August 2002 newspaper advertisement and the related bill showing the ad ran in August.

In response, plaintiff's only evidence was an affidavit from a former North Care employee repeating a hearsay statement from a supervisor who introduced Hamm to her as the person replacing plaintiff. The district court ruled that plaintiff failed to present evidence that he was replaced by a younger worker and

that the undisputed evidence showed only that North Care hired an additional maintenance worker months before plaintiff resigned.

We find no error in the district court's analysis of this evidence. Plaintiff argues that the affidavit from Ms. Brandenberger was insufficient to sustain summary judgment because it was simply a self-serving declaration from an interested North Care employee. There are two flaws in plaintiff's argument. First, it is plaintiff who failed to present evidence in support of his allegation that Hamm replaced him. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (holding that nonmoving party is not entitled to a trial merely on the basis of allegations, but must come forward with some significant probative evidence to support its claim). As the district court noted, plaintiff's affiant merely repeats inadmissible hearsay. Hearsay testimony that would not be admissible at trial is not sufficient to defeat a motion for summary judgment. *Thomas v. IBM*, 48 F.3d 478, 485 (10th Cir. 1995). Further, there is no showing that either his affiant or the quoted supervisor had any personal knowledge as to whether Hamm replaced plaintiff, or ever assumed any of plaintiff's job responsibilities, or that either person had any role in hiring Hamm or otherwise had any personal knowledge of the hiring circumstances. *See Tavery v. United States*, 32 F.3d 1423, 1427 n.4 (10th Cir. 1994) (noting that, to be admissible for summary judgment purposes, affidavit statements must be made on personal knowledge).

Second, plaintiff's evidence does not controvert North Care's evidence that Hamm's position was advertised before any of the problems between it and plaintiff arose, or that Hamm was hired months before plaintiff resigned. In contrast to plaintiff's evidence, North Care's affidavit was properly based on Ms. Brandenberger's personal knowledge and it set forth facts that would be admissible as evidence. Morever, contrary to plaintiff's allegation, Ms. Brandenberger's affidavit was also supported by contemporaneous business records. The mere existence of a scintilla of evidence in support of plaintiff's position is insufficient to create a dispute of fact that is "genuine" under Rule 56, and we agree with the district court that plaintiff failed to present facts from which a reasonable jury could find in his favor. *See Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999).

Plaintiff next contends the district court erroneously required him to present direct evidence of age discrimination. This misstates the district court's order: it merely noted, correctly, that plaintiff did not present any such evidence. We also agree with the district court, for the reasons stated in its order, that plaintiff did not present evidence of a pattern or practice of age discrimination. *See Vanasco v. National-Louis Univ.*, 137 F.3d 962, 967 (7th Cir. 1998) (explaining that "evidence of scattered decisions either favoring or disfavoring

older employees reveals little about the [employer's] processes and is certainly insufficient, without more, to prove a pattern of age discrimination"). The district court correctly dismissed plaintiff's ADEA claim.

*FMLA Claim* .

FMLA requires employers to provide their employees with up to twelve weeks of unpaid leave in the event the employee has a serious medical condition. 29 U.S.C. § 2612(a)(1)(D). The employer may require the employee to submit a medical certification of his medical condition prior to authorizing the leave, 29 U.S.C. § 2613(a); 29 C.F.R. § 825.305(b), and may require the employee to submit a "fitness-for-duty" certification from his physician as a condition of returning to work, 29 C.F.R. § 825.310. If the employee has not submitted a required "fitness-for-duty" certification by the time the employee's FMLA leave has ended, the employee may be terminated. 29 C.F.R. § 825.311(c). FMLA makes it unlawful for any covered employer "to interfere with, restrain, or deny the exercise of or the attempt to exercise" FMLA rights, 29 U.S.C. § 2615(a)(1), or to retaliate against an employee for exercising his FMLA rights, 29 U.S.C. § 2615(a)(2).

The district court ruled that plaintiff presented no evidence from which a reasonable juror could conclude that plaintiff's decision to resign was causally related to the fact that North Care provided him with FMLA benefits. On appeal,

plaintiff first contends the district court failed to address his allegation that North Care interfered with his right to FMLA benefits. Although the district court's topic heading only referred to plaintiff's FMLA retaliation claim, it is clear from the text of its order that the court considered plaintiff's interference claim. Indeed, plaintiff presented no evidence in support of this allegation, and, thus, we find no error. *See Celotex*, 477 U.S. at 324.

Plaintiff next contends the district court erred in finding no evidence in support of his claim that he was constructively discharged in retaliation for exercising his FMLA rights. To establish a prima facie FMLA retaliation claim, a plaintiff must show that (1) he availed himself of a protected right under the FMLA, (2) an employment decision adversely affected him, and (3) a causal connection between the two actions exists. *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1325 (10th Cir. 1997). To establish a constructive discharge, plaintiff must show that North Care "made working conditions so difficult that a reasonable person in the employee's position would feel compelled to resign." *Sandoval v. City of Boulder*, 388 F.3d 1312, 1325 (10th Cir. 2004) (quotation omitted).

Plaintiff alleged in his complaint that North Care refused to allow him to return to work after his hospitalization in retaliation for using FMLA benefits. The district court ruled there was no casual connection between plaintiff's decision not to return to work and the use of his FMLA benefits. In this regard,

the district court noted that plaintiff had failed to submit the requested "fitness-for-duty" certification, to which North Care was legally entitled under FMLA. *See* 29 C.F.R. § 825.311(c).

Plaintiff argues the district court failed to consider the letters from his doctors stating he had been absent from work because of his (unspecified) medical condition, and that he did provide some medical evidence of medical restrictions related to standing and lifting. These documents are not relevant, however, because they only address the reasons for plaintiff's absence, not his ability to return to work. The issue is not whether plaintiff submitted proper certification to receive FMLA leave; it is undisputed that plaintiff never requested FMLA leave and that North Care provided such leave on its own initiative as soon as it learned of plaintiff's hospitalization, and continued providing him with FMLA leave until it was depleted.

At issue here is only whether the adverse employment action – North Care's refusal to allow plaintiff to return to work after his hospitalization – was in retaliation for plaintiff's exercise of his FMLA rights. As the district court correctly explained, North Care was legally entitled under FMLA to require plaintiff to provide a "fitness-for-duty" certification before allowing him to return to work, and plaintiff failed to do so. Plaintiff contends that North Care never specifically requested a "fitness-for-duty" certification regarding his

hospitalization, but the record demonstrates otherwise. North Care sent plaintiff a letter on October 7, 2002, specifically informing him that it would need a medical release from all of the doctors who had treated him, not just from his foot doctor, stating he was able to perform his job. We agree with the district court that plaintiff failed to present evidence that North Care retaliated against plaintiff for using his FMLA benefits. We also agree that plaintiff did not present evidence of any pattern or practice of retaliatory FMLA discrimination.

*Workers' Compensation Retaliation Claim.*

Plaintiff contends there was evidence that North Care was on notice that his injury was work-related, and, therefore, the district court erred in dismissing his workers' compensation retaliation claim. To establish a prima facie case of retaliatory discharge pursuant to Oklahoma's Workers' Compensation Act, a plaintiff must prove (1) employment, (2) an on-the-job injury, (3) receipt of treatment under circumstances which would put the employer on notice that treatment has been rendered for a work-related injury, or that the employee instituted or caused to be instituted, proceedings under the Act, and (4) consequent termination. *Buckner v. Gen. Motors Corp.*, 760 P.2d 803, 806 (Okla. 1988).

Here, it is undisputed that plaintiff was not injured on the job. He suffered from a 1993 injury to his arm and hand; a foot condition known as Morton's

neuroma, diagnosed in 1998; and a June 22, 2002 injury to his foot which occurred at home. Further plaintiff admitted in his deposition that he never told anyone at North Care that he suffered a work-related injury or that he intended to file a workers' compensation claim.

He contends, however, that he informed North Care that the injury to his feet was exacerbated by his new job duties, that North Care knew he was receiving medical treatment for his feet, and that this information was sufficient to put North Care on notice that he might file a workers' compensation claim. We disagree. None of plaintiff's communications with North Care suggested in any way that his injuries were work-related. Merely telling North Care that he was receiving medical treatment related to non-work-related injuries and was unable to do prolonged standing or lifting over twenty pounds because of those injuries is insufficient to give North Care notice that he might later characterize those injuries as work-related. *Buckner*, 760 P.2d at 810-11 (holding that an employer's knowledge that the employee sought medical treatment, without more, is insufficient notice that a workers' compensation claim is imminent). We agree with the district court that the record contains no evidence which might have put North Care on notice of the possibility of a workers' compensation claim.

*ADA Claim.*

Plaintiff next claims that the district court erred in dismissing his ADA claim. "Merely having an impairment does not make one disabled for purposes of the ADA. Claimants also need to demonstrate that the impairment limits a major life activity." *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 195 (2002). After discussing the evidence and the relevant legal precedent at length, the district court ruled that plaintiff did not make this showing. Plaintiff argues this was error because the question of whether he has a physical impairment that substantially limits one or more of his major life activities is a fact question for a jury, not the district court.

Whether a plaintiff has an impairment under the ADA and whether the identified activity is a major life activity are questions of law for the court. *Doebele v. Sprint/United Mgmt. Co.*, 342 F.3d 1117, 1129 (10th Cir. 2003). Although the question of whether an impairment is substantially limiting is ordinarily a factual question for a jury, it may be evaluated by the judge upon a motion for summary judgment. *Id.* at 1130 n.5; *Bristol v. Bd. of County Comm'rs*, 281 F.3d 1148, 1161 n.5 (10th Cir. 2002), *vacated in part on different grounds*, 312 F.3d 1213 (10th Cir. 2002) (en banc).

To demonstrate that an impairment is substantially limiting, a plaintiff must show that he is "unable to perform the activity or is significantly restricted in the

-12-

ability to perform the major life activity compared to the general population."
*Lusk v. Ryder Integrated Logistics*, 238 F.3d 1237, 1240 (10th Cir. 2001).
Where an impairment is not so severe that it is "substantially limiting on its face,"
a plaintiff must present "evidence comparing [his] . . . restrictions to that of an
average person." *Id*. Limitations on the ability to engage in life activities, such
as prolonged standing and lifting heavy objects, are part of the human condition,
and unless an ADA plaintiff can show that his impairment reduces his capabilities
significantly below those of the average person, he is not deemed "disabled"
under the Act.

We agree with the district court, for the reasons stated in its order, that
plaintiff presented no evidence that his ability to walk or stand is significantly
lower than that of the average person. His evidence that he may not lift more than
twenty pounds is likewise insufficient. As the district court correctly noted, a
twenty-pound lifting restriction is not, as a matter of law, substantially limiting on
its face. *See Rakity v. Dillon Cos. Inc.*, 302 F.3d 1152, 1160 (10th Cir. 2002)
(noting precedents from other circuits that ten and twenty-pound lifting
restrictions are not substantially limiting, citing *Pryor v. Trane Co.*, 138 F.3d
1024, 1025 n.2 (5th Cir. 1998); *McKay v. Toyota Motor Mfg., U.S.A., Inc.*, 110
F.3d 369, 373 (6th Cir. 1997); and *Wooten v. Farmland Foods*, 58 F.3d 382, 384,
386 (8th Cir. 1995)); *see also Lusk*, 238 F.3d at 1241 (citing *Thompson v. Holy*

*Family Hosp.*, 121 F.3d 537, 540 (9th Cir. 1997) (twenty-five pound lifting restriction is not a substantial limitation on the ability to lift); *Williams v. Channel Master Satellite Sys., Inc.*, 101 F.3d 346, 349 (4th Cir. 1996) (same) (abrogated on other grounds by *Baird ex rel. v. Rose*, 192 F.3d 462 (4th Cir. 1999)).

The evidence presented by plaintiff was insufficient to allow a reasonable jury to find that any of his impairments substantially limited one or more of his

major life activities.  Thus, the district court correctly dismissed his ADA claims.

The judgment of the district court is AFFIRMED.


Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge